OPINION
In this accelerated calendar case, appellant, Sheri Rimes ("Rimes") appeals from the judgment of the Lake County Court of Common Pleas entered on March 23, 1999. In an administrative appeal, the court affirmed the final decision of the Ohio Department of Human Services ("ODHS"), which found that Rimes, a recipient of public assistance, had failed to participate in required work activity without good cause. Consequently, a first level sanction, denial of benefits for one month or until compliance, was imposed on Rimes. The following facts are relevant to a determination of this appeal.
For purposes of appeal, the parties filed joint "stipulations of fact" based upon the evidence presented at the administrative hearing. Rimes is the single mother of a son who was two years old in 1997. They both received cash assistance, Medicaid, and Food Stamps from the Lake County Department of Human Services ("LCDHS"). As of October 1, 1997, under R.C. Chapter 5107, all recipients of cash assistance were required to enter into written self-sufficiency contracts with their local county department of human services. Rimes entered into a self-sufficiency contract with LCDHS on December 22, 1997. Under this contract, Rimes was required to participate in the JOBS program. Her participation was contingent upon her child being placed in day care. The LCDHS worked with Rimes to find the support services (day care) so that she could participate in the JOBS program.
In November 1997, Rimes reported to LCDHS that her child had been sexually molested by a private babysitter. According to Rimes, her child told her the babysitter was "putting toys in his butt." The Fairport Harbor Police Department investigated the claim and concluded the allegation could not be substantiated. The matter was also investigated by the Lake County Children's Services Agency, which concluded that either there was no abuse, or that the allegation could not be substantiated.
In early December 1997, LCDHS succeeded in finding a day care placement for the child one block from the JOBS program site, both accessible to Rimes via public transportation. Rimes was notified by her caseworker that she was to start the program on December 23, 1997. Upon notification of the start date, Rimes contacted the supervisor of the JOBS program and asked if her participation could be delayed because she did not want to place her son in day care due to the abuse that allegedly occurred in November. The supervisor contacted the LCDHS's Children's Services Agency for an opinion since it had investigated the alleged abuse. The Children's Services Agency advised the supervisor that the child had not been traumatized and that he could do well in a day care setting. Based upon this information, the supervisor informed Rimes that she would have to participate.
On December 22, 1997, Rimes reported to LCDHS and signed her self-sufficiency contract. However, having signed the contract, Rimes told LCDHS that she would not be able to participate in the JOBS program. She did not show up the next day to begin the program, and, consequently, on December 24, 1997, the LCDHS proposed to sanction her for failing to participate.
On January 4, 1998, Rimes requested a state hearing on the issue of whether she had good cause to refuse to participate in JOBS. The hearing was conducted by telephone on March 28, 1998. Two witnesses testified on behalf of the agency, Rick Labus, the JOBS supervisor, and Lynn Gahr, Administrator of the Public Assistance division of LCDHS. On Rimes behalf, Rimes, her minister, Pastor Vealainen, and Dr. Barrett testified. Dr. Barrett testified he is a child psychoanalyst, clinical psychiatrist, and Director of the Hanna Perkins Preschool and Treatment Center in Cleveland, Ohio.
The sole issue at the state hearing was whether Rimes had good cause to refuse to participate in the JOBS program. In cases of single custodial parents with children under age six, day care is considered a necessary support service. Rimes refusal was based on her claim that "appropriate" day care was not available. The JOBS supervisor, Rick Labus, testified that the LCDHS based its conclusion that the day care facility they had arranged was appropriate primarily upon the information it had received from the Children's Services Agency. No person from the Children's Services Agency testified at the hearing. Labus relied upon the Children's Services Agency because of its experience in investigating child abuse, and because it had investigated this particular allegation of abuse. The Children's Services Agency told Labus that the child could function adequately in day care. Therefore, the LCDHS concluded Rimes did not have good cause for not participating.
Testifying on behalf of Rimes, Dr. Barrett stated that he had worked with Rimes and her child for several weeks. He concluded that the child showed compelling symptoms of separation anxiety. He could not rule out that the child had been abused or over-stimulated or traumatized. While he could not state that abuse had positively occurred, Dr Barrett testified that it would not be in the child's best interest to place him in day care without a protracted period of time (four to six months) during which Rimes would be present on the premises with him. He recommended the child be placed in a day care that has experience working with children that have similar issues and, that Rimes be present at the day care for the transition period.
The state hearing officer concluded the testimony offered on Rimes' behalf was inconclusive and did not establish her claim for good cause for non-participation in the JOBS program, noting that Dr. Barrett had not made a finding that abuse had, in fact, occurred. The hearing officer found that Rimes' claim of good cause based on the allegations of abuse was unsupported by any documentary evidence that substantiated the abuse, such as police reports or medical records. The officer determined that the decision to impose a first level sanction was correct. Rimes subsequently filed an administrative appeal with the ODHS. The ODHS upheld the sanction in a decision issued on May 14, 1998. Rimes then appealed to the Lake County Court of Common Pleas.
While the parties stipulated to a number of facts, the stipulations did not resolve the issue of whether the child had been abused, and the question of whether the proposed day care arrangement was appropriate remained in controversy. The court consequently reviewed the record on this issue and determined that, while the local law enforcement and Children's Services Agency had found no evidence to support the allegation, the evidence offered by Rimes to establish the abuse was either ambiguous, inconclusive, or contradicted. The court concluded that although Dr. Barrett's testimony was insightful, probative, substantial and reliable, it did not provide a basis for non-compliance. The court concluded the finding below was supported by reliable, probative and substantial evidence, and the imposition of the sanction was in accordance with law. The imposition of the sanctions was affirmed. From this judgment, Rimes timely filed notice of appeal, assigning the following error:
 "The reviewing court erred in finding that the Ohio Department of Human Services' decision to sanction the appellant for refusing to participate in a work activity was in accordance with law and supported by reliable, probative and substantial evidence."
The standard of review for the court of common pleas evaluating an administrative decision is whether the decision is supported by a preponderance of reliable, probative and substantial evidence and is in accordance with law. Kisil v. Sandusky (1984), 12 Ohio St.3d 30. The court must give consideration to the entire record before the agency, and such additional evidence as the court may admit, and must appraise all such evidence as to the credibility of witnesses, the probative character of the evidence and the weight to be given it. Andrews v. Board of LiquorControl (1955), 164 Ohio St. 275, paragraph one of syllabus. "The standard of review from an administrative agency's determination pursuant to R.C. 119.12 is not whether the evidence proffered by the petitioner is reliable, probative, and substantial; rather, the standard is whether the decision rendered by the agency is supported by reliable, probative, and substantial evidence." In re Wellesley Corp. (1985), 18 Ohio St.3d 176,178. In making this determination it is essentially a question of the presence or absence of the requisite quantum of evidence. Hale v. Bd. ofEdn. (1968), 13 Ohio St.2d 92, 96. It is a hybrid form of review wherein the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts, and having done so, determine whether its decision is supported by a preponderance of the evidence.Id., 96-97. An appellate court's review of administrative appeals is limited to determining whether the court of common pleas abused its discretion in reaching its conclusion. Lorain City Bd. of Edn. v. StateEmp. Relations Bd. (1988), 40 Ohio St.3d 257, 261. Abuse of discretion connotes more than an error of law or of judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
Rimes argues that, as a condition for her participation in the JOBS program, the county was obligated not only to provide day care for her, but "appropriate" day care. She claims the LCDHS and ODHS erred in limiting their review to only whether day care was made available, not whether "appropriate" day care was made available.
R.C. 5107.16(B) directs each county to establish standards for the determination of good cause for failure or refusal to comply in full with a provision of a self-sufficiency contract. R.C. 5107.16(C) directs the hearing officer in a state hearing to base the decision in the hearing or appeal on the county's standards of good cause. The relevant Lake County reasons for non-participation constituting good cause are:
 Illness of the participant or another assistance group family member if care by the participant is required;
* * *
 4) Unavailability of childcare or transportation for that specific date of participation.
However, R.C. 5107.16(B)(1) qualifies the county's standards for good cause, stating in section (B)(1)(b) that good cause shall include the following, in relevant part:
 "(b) Failure of the county department to provide for the assistance group to receive support services the county department determines under section 5107.66 of the Revised Code to be necessary. In determining whether good cause exists, a county department shall determine that day care is a necessary support service if a single custodial parent caring for a minor child under age six proves a demonstrated inability, as determined by the county department, to obtain needed child care [sic] for one or more of the following reasons:
 "(i) Unavailability of appropriate child care [sic] within a reasonable distance from the parent's home or work site;
"* * *
 "(iii) Unavailability of appropriate and affordable formal child care [sic] arrangements."
Rimes is correct in her assertion that state law requires that day care provided in conjunction with R.C. Chapter 5107 be "appropriate." What, in the context of R.C. Chapter 5107, constitutes "appropriate" childcare is an issue of first impression in the State of Ohio. The clear implication of the statute is that "appropriate," or the appropriateness of an arrangement, is to be looked at from the standpoint of the safety and well-being of the child. The term cannot be construed to address the appropriateness with respect to the parent, as the service is being provided at no cost, and the statute specifically and otherwise addresses the appropriateness of a particular childcare center's location. Thus, the term must address the appropriateness of a childcare arrangement from the viewpoint of the subject child, and this can only concern the suitability of an arrangement with respect to the health, safety and welfare of the child.
R.C. 5107.16(B)(1)(b) places the burden on her to prove appropriate day care is unavailable, and reposes the authority with the county department to make the determination whether the parent has proven the unavailability of appropriate day care.
We believe Rimes satisfied that burden through the testimony of Dr. Barrett, whose credentials established him as a child psychoanalyst, clinical psychiatrist, and Director of the Hanna Perkins Preschool and Treatment Center. His testimony established that the LCDHS' proposed day care arrangement was not appropriate from the standpoint of the health, safety, and well-being of the child. In contrast, the testimony of the LCDHS on this issue was presented by Rick Labus. Labus could only testify as to what he was told by the Children's Services Agency and the police. This testimony consisted of the conclusion that the allegation of abuse was not substantiated, and that Labus was informed by the Children's Services Agency that the child could function in a childcare arrangement. Regardless of whether sexual abuse of the child had occurred, Dr. Barrett was clear that the child needed special childcare arrangements that would include the active participation of Rimes. The hearsay testimony of Labus as to the conclusion of the Children's Services Agency contained no specificity as to what type of childcare arrangements would be appropriate for the child. The LCDHS presented no substantial, reliable, and probative evidence, from a "safety of the child" standpoint, to support its decision.
Therefore, we conclude the court of common pleas abused its discretion in concluding that the decision rendered by the agency was supported by reliable, probative, and substantial evidence. Appellant's assignment of error has merit. The judgment of the court of common pleas is reversed, and the matter is to be remanded appropriately for the restoration of appellant's benefits and the removal of the sanction from appellant's records.
 _______________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J., dissents, NADER, J., concurs.